I call then for argument the matters of U.S.A. v. Jimenez, Martel, Junta, Nevis, and Ebreu. We have designated to the parties the various issues raised mostly in the brief and joined by various other defendants. We've identified only two issues upon which we wish to hear oral argument. And they are the issues with respect to the bank fraud statute and whether or not kiting has a true bank requirement to it. And the other is the hearsay-slash-confrontation clause issue implicated in numerous of the exhibits that were admitted into evidence. I believe the appellant's time has been divided equally between Mr. Croviton and Mr. Fassett. Is that correct? Yes, sir. So Mr. Croviton, am I pronouncing your name correctly? It's Crobaton. Crobaton. I'm sorry. Thank you. Good morning, your honors. Good morning. May it please the court. My name is Gerald Crobaton, and I represent the appellant, Rene Ebreu. I will argue this morning the first point in which your honors requested oral argument, and that is the question of whether or not the district court erred in denying the motion for judgment of acquittal on count 14, the bank fraud count. And my colleague, David Fassett, will argue the second point that your honors requested argument on. Your honors, this case presents a classic example of why this court should require the government to prove a fraud between two banks in a classic check-kiting case. In the classic check-kiting case, there is an element of deception and lack of knowledge, a surreptitious lack of knowledge, on the part of both of the financial institutions that was simply not present in this case. In the classic check-kiting case, neither bank is aware of the insufficiency of funds in the other. And unlike here, where the appellants argue this was instead an extension of credit on a revolving and continuing basis, there is an element of deceit and surreptitiousness in the classic check-kiting case that is not present here. The statute 1344 doesn't talk about classic check-kiting cases. It doesn't talk about traditional check-kiting cases, as some of the cases, including our own, have invoked the term. In fact, the statute is a very broad bank fraud statute. It's not a check-kiting statute. And starting at the very basic level, and maybe for some of us it might be the beginning and end point, in the plain language of 1344, where can you find anything that suggests a two-bank requirement for a kite? Well, Your Honor, you're absolutely correct, Judge. The statute itself does not speak of two institutions. It doesn't speak of one. It says a financial institution. Well, you know, ironically, it does speak of one. I wouldn't advance this argument as one I would expect to be a winner. But if you looked at the literal terms of the statute, subsections 1 and 2 talk about a financial institution. I suppose I could keep a straight face and make an argument that, in fact, what it talks about is only a single institution check kite, as opposed to a two institution check kite. Well, Your Honor, it does talk in terms of a financial institution. You're absolutely correct. But this Court has read the literal language of 1344 rather expansively in its jurisprudence. In fact, in Corrosion and Lea, this Court has held that the disjunctive use of the term or, between 1344.1 and 1344.2, should not be read as or, it should be read as and. And that in the 1342 case, there has to be evidence of an intent to defraud a financial institution. So that this Court has imposed on the literal language of 1344 some additional requirements. And we submit this is an appropriate case where it should impose a two bank requirement. Because this was not a traditional check kiting scheme, if you will, Your Honor, involving two banks. This is a situation where there was knowledge, consent, approval, acquiescence on the part of not just one bank officer, but several. But what the statute by its terms proscribes is a scheme or artifice. How has the government not proven a scheme or artifice? Well, Your Honor, the government has not proved it simply because in this situation where you have a single bank, one bank as opposed to two, it admits of the possibility of the proofs in this case, which we submit. This goes really to the next point in our brief about the courts, the district courts charged to the jury. And our position that the district court in essence charged us out of the case on our principal defenses of good faith. And our argument that the government had not proved this specific intent necessary under the statute of defraud. And I would urge the court to read that argument in conjunction with this particular point of our brief that talks about one bank versus two. Because our position is, Your Honor, we did not get a fair trial on the issue of 1344 in general. And that the one bank versus two bank issue really goes to the elements that we argued were in the evidence. And the district court permitted us to admit evidence of consent, knowledge, acquiescence. Not just once, as I say, but in the case of Mr. Vessa, for example, 67 times approvals of overdrafts. And our position is, Your Honor, simply that the district court, while it admitted that evidence, when it then charged the jury, it told the jury that those elements of our defense were not defenses in essence. So I readily concede, Your Honor, that I have an uphill battle arguing that the statute by its literal terms certainly doesn't refer to more than two institutions. But our position is that in this case, on these facts, this court should impose that requirement on 1344. Thank you very much. Thank you, Your Honor. Counsel, did you reserve time for rebuttal? I did not, Your Honor. All right.  Mr. Fassett. Good morning, Your Honor. My name is Dave Fassett. My law firm represented Appellant Fernando Jimenez at the trial below. The issue which I am addressing, I believe, was initially argued at .5 of Mr. Abreu's brief. And that concerns both the residential mortgage loan counts and the commercial mortgage loan counts. I should note that my client, Mr. Jimenez, was not charged in any of the commercial mortgage loan counts. He was, however, charged and convicted of the residential mortgage loan conspiracy and one single incidence of residential mortgage loan mail fraud, substantively. I know the court has last week issued a letter advising counsel of specific issues which it would like us to address, and I will address those. By way of background, however, I think it's important to recognize the circumstances of this case. The government introduced evidence regarding 30 residential loans and 10 commercial loans at this trial, all of which were allegedly deemed fraudulent. However, only 6 of the 40 borrowers were proffered for testimony at the trial. As live witnesses? As live witnesses, that is correct. And indeed, while there was some very limited testimony about other specific loan files from what we call insiders at Mortgage Pros, there was no testimony whatsoever, even from this handful of Mortgage Pro insiders, with respect to as many as 10 of these 40 loans. 25% of the 40 loans that were at issue at trial had no testimony concerning them whatsoever. The government's method of proof in this case was documents. It was business records, it was IRS tax abstracts, and it was IRS tax returns filed by the borrowers. And the argument advanced to the jury over and over again by the prosecution. Which came in in self-authenticating fashion through, in the case of the tax returns, a certified or certification stamp. Is that correct? That is correct. And in the case of the abstracts, through a certificate of official record. Correct. And ditto with respect to, that is, a certificate of official record with respect to other taxpayer documents, which I have to say just for myself in terms of exactly what they are, is probably above my pay grade. But in any event, you have two different forms of authentication being used for these various documents, all of which were admitted into evidence. Actually, three different forms. With respect to business records, there were 902 FR, Federal Evidence 90211 certifications. But in no instance here are you pressing the inadmissibility of the underlying documents, are you? It goes to, rather, the certifications. It goes to the certifications and it also goes to what we call the embedded hearsay in some of the documents, specifically the tax returns filed by the borrowers themselves. Which was critical because of the method of proof in the argument advanced by the prosecution of the trial, which was, in a nutshell, ladies and gentlemen of the jury, please compare the loan materials, which were admitted as business records, with the borrower's tax returns admitted pursuant either through IRS abstracts or the tax returns themselves. Was it hearsay? And I am truly sitting here like a former district judge and trying to understand the proffer. Was this being proffered by the government as hearsay evidence? That is, were they being proffered and were they admitted for the truth of the matter asserted within those documents? We respectfully submit absolutely, Your Honor. Absolutely. Again, the jury was invited to compare and was told vehemently that the... How would the truth, then, of the figures contained on those tax forms be of any consequence at all by your very argument? By inviting the jury to regard those figures as true... In the record, Ted, it shows the invitation to the jury in the record. Because that has never been my understanding of the government's theory of the case, and hence its theory of admissibility here of these underlying documents. And certainly, counsel for the government is going to have ample opportunity to explain that to us as well. Well, it would take me some time to find the record sites, Your Honor. I believe our brief... We don't pay a lot of attention to the clock around here, so if you or your co-counsel were invited to find it, and it's pretty important that you do because, as I say, that is not my understanding of what the government's theory has been. Record sites appearing on... Starts on page 15, but the sites are actually on page 16 of our reply brief, Your Honor. The sites are 4A.1141, transcript 9014 through 9015, arguing that the... And in the parenthetical in our reply brief, arguing that the certified true tax return listed in employer different than the one reflected in the loan application file, proving that the latter was tainted by fraud. Another site, same page, 4A.1148, transcript site 9433, quoting, quote, and there's false tax returns and you can compare them to the true returns certified from the IRS, close quote. Another site, same page, record site 4A.1142, transcript 9025. The parenthetical is contrasting the, quote, unquote, phony return in the loan file with the, quote, unquote, real return obtained from the IRS. Well, the real return is the real return in the sense that it was the return filed, correct? Right. And the jury, under this evidence, couldn't the jury have said, well, these folks might have been fudging on their income tax returns as well, but what's important here is that the lenders wanted to see the income tax returns as filed, whether true or not. Isn't that the government's theory in this case? That is not what the government argued below. It's certainly not my recollection or understanding of the case that was presented by the prosecution below. Well, again, the counsel for the government will have an opportunity to address that and we'll ask Mr. Morimarco specifically, but my understanding of the government's theory has been that really it wouldn't have mattered to the government's case if the taxpayers were fudging on their tax returns. Wouldn't have mattered. What difference would that make here? Maybe you can explain what difference it would make. These counts essentially charge fraud, and I think it's incumbent upon the government in any fraud case to prove the true facts. If they are alleging that the loan files contained false or fraudulent facts, what are the true facts? How can the government prove that without attempting to prove what the true information was? Moreover, whether that true information or the discrepancy, the alleged discrepancy between the true and false information is material for purposes of the fraud counsel. Like the presiding judge, I'm a former district judge, too, and I was always concerned about how quickly my trials could move along and how we could cut out the underbrush and get down to the real arguments. And so I used pre-trial orders, as I think every district judge in the country does. And so I'm interested in knowing how far in advance of trial you and your colleagues had these certifications from the IRS and the government, what the provisions of the trial court's pre-trial order was governing them and any objections to them, and whether or not any such objections were in fact lodged. Candidly, Your Honor, I do not know how long ahead of time we had the certifications. It says two years in the briefs. Well, the documents were made available for inspection, I believe. I assume we had the certifications with them. That I don't know. Judge, if I may? Sure. In some instances, and I can't quantify how many, the 902.11 certifications were presented to us on the very day that the government was seeking to admit the evidence. It is true that in the case of many of the documents, we had them sufficiently in advance of trial that we could have reviewed them and lodged an objection. But frankly, the issue of the authenticity of the documents was not something we were focused on at that point in time. It was really the foundational requirements. That's what I thought, really, we were getting at here. And I've been concerned that I may have improperly focused on, greatly improperly focused in this case, because I understood the major attack to be on the certifications themselves and not the underlying documents. But if I'm mistaken and there's no attack on the certifications that have been used here under 902, I'm going to have very few questions remaining. I think we ought to turn it back to Mr. Faxon. No, Your Honors. We are attacking on this appeal both the certifications and the underlying. We are not attacking the business records, as I understand it, that were admitted pursuant to the 902-11 certifications. Not directly, anyway. We are, however, attacking the 902-11 certifications themselves. And our position is if Your Honors were to agree with that attack, then the business records were improperly admitted as well. Let me ask you this. Assume, simply for purposes of argument, for your purposes, that the underlying documents are not hearsay. The tax returns, the tax information that my colleagues and I have been asking about is not hearsay. What, then, is the import of a suggestion that the certifications are? Doesn't that seem rather unusual that we could be looking at underlying documents which are not themselves hearsay, but that the attack on the certification, which is simply that these are what they purport to be, is somehow hearsay? I understand, and I think Your Honors is articulating or summarizing the rationale of the Ellis Court in the Seventh Circuit, which went the other way on the 902-11 certification issue for precisely that rationale. However, there is authority to the contrary, and we respectfully urge this Court to adopt that contrary authority, the Wittig decision we have cited in our briefs. And we think that is more consistent with the Supreme Court's Confrontation Clause analysis as laid down in Crawford and Davis more recently. The critical issue is whether the document or the statements contained therein are testimonial. We submit respectfully that 902-11 certifications should be deemed and are testimonial for purposes of the Confrontation Clause. That is our challenge to the 902-11 certifications. If the 902-11 certifications fall on that ground, the underlying business records also fall. I have nothing. Thank you very much. Thank you, Your Honors. You also did not reserve time for rebuttal. That's correct. Thank you. Mr. Moore-Marco. Mr. Moore-Marco, having heard the previous repartee, I assume that you know what the first question coming out of the box, at least from here, is with respect to the documents. I'm ready for whatever you've got, Judge Smith. Well, what was your proffer? What did the government offer these underlying exhibits for? Our theory of the case, Your Honor, was that these documents were not offered for the truth of the matter asserted therein. Our case was that these were fabricated returns, and what the lenders were asking for and the fraud here was they were asking for actual returns that were filed with the IRS, regardless of the truth or falsity thereof. We made that point. For the purposes of your prosecution, the underlying tax documents didn't have to be accurate, did they? They didn't have to be truthful. No. No, it absolutely did not. That was something that the lenders would rely on, and they wanted the actual documents. What happened in this case, Your Honor, to be perfectly frank, was it was the defense trying to create a diversion through the trial and make that the issue, and we fought as hard as we could. Oh, come on. Defense counsel never do that in trial, neither do prosecutors. Well, Your Honor, I appreciate the comment there. What was happening here, because when we did have individual borrowers come up who had submitted IRS returns, we felt we had to at least meet their challenge and say for those individuals, we asked them in each case which was true, the information you provided to the lenders, the information you provided to the IRS, and for those six borrowers that appeared, they all said the information we provided to the IRS. We felt we couldn't let it go unanswered, but it certainly was in no way essential to our case, and they wanted and they were hoping to create a burden for us that we couldn't meet but that really we never needed to take on. And certainly in closing argument, the point was made on at least two occasions by the government that what's important here is that these documents are fabricated, that it's not the truth or falsity that's really an issue here. And so really what we're urging the court to do on the 90211 certification issue, which again is I read their briefs the same way I think the court did, which is I… Why aren't the certifications testimony? They're prepared for purpose as a litigation. I will address that issue. I'll do it first if you want. Our position is the court should not reach that issue, but let me address it for you. That's fine. Why should we not reach it? We shouldn't reach that issue because we think that it has to be harmless error in this case, no matter how you come at it. Since the underlying business records are not being challenged or at least are certainly admissible and there's no confrontation clause issue with business records or tax records, that even if we improperly admitted 90211 certifications that shouldn't have come in, it's really much ado about nothing. And the reason I say it's not important is because the court should be aware that the government's practice post-Crawford has been to not seek to even move these into admission. We have them available for rule 104 hearings if they're requested. We provide them to defense counsel 30 days ahead of trial. If there's an issue about them, they can be raised pre-trial and sorted out. About the certifications. The certifications, right. About the 90211 certifications. Right. The certifications we no longer seek to admit into evidence. We don't view them as necessary. That question occurred to me. If this is not, this being the underlying evidence, is not hearsay, then why is there a need to invoke a hearsay exception for purposes of admissibility? They certainly, because we have a business records exception and the hearsay rule on these are all business records, the 90211 certification certainly gets us out of the need to call any foundational witness at all. And certainly it eases the burden there. And certainly we needed to show at some level where these records came from. But it's not, obviously it wasn't what was contested. Now, I think the more interesting question, obviously, is are these testimonial or not? Well, sure. Don't we, the issue's been raised. So don't we have to analyze these certifications under both Crawford and Davis? Well, Your Honor, if you were to hold that this is necessarily harmless error, then you can skirt the issue. And you can just say we don't need to reach this difficult constitutional issue because however we decide it, the government's going to win. But to try to help the court along a little here, I have to say that I think the reason the government's adopted this position post-Crawford is because there's some doubt in our own minds as to where the Supreme Court's going to be going. I mean, if you look at, there are two ways you can analyze it. If you just look at the language. This is not an easy issue. No, it is absolutely not an easy question, Your Honor. So far, all the cases that have come down from the courts of appeals have said that things like this, either a 90211 certification directly in Ellis or those certificates of non-finding of record are non-testimonial. And there's some validity to that. On the one hand, if you look at the language in Crawford about some statements under oath intended to be presented at trial, then we've got a problem. The thing I would urge the court to think about, though, is that in every case the Supreme Court has looked at so far, you were dealing with core testimonial statements. And that's Justice Scalia's term, core testimony. Absolutely. And it's funny, when you go back to Coy versus... And he, in fact, enumerates a few of them. Grand jury testimony. Yes. Testimony prior to trial, a preliminary hearing. In all those cases, the facts were a witness saying something about the defendant that you would think that was absolutely crucial to the case. It was somebody saying, he beat me. So you could argue and you could win on this issue by virtue of the fact that the party certifying to these was saying nothing about the defendant or defendants themselves. Yes, Your Honor. In fact, nothing about the defendant's conduct here was being certified. Right. These witnesses knew nothing about the defendant. And so when you look when Justice Scalia talks in some of these confrontation clause cases about the need for the witness to have to look the defendant in the eye when he's giving his testimony, and some of that, again, it comes out in those cases where a child is accusing someone of sexual misconduct or a woman is accusing someone of being battered, which is how all these arose, then you say, yeah, you've got to look the person in the eye. But there's no advantage to looking a records custodian in the eye and saying, yes, these are records that we regularly keep in the course of business at A&P Bank. There's no feel for the core value that's at stake in the confrontation clause. So it's hard to say what the Supreme Court is going to do with this in the end. And the reason we're asking the court not to reach it is because it's almost a double-edged sword for us here. Because if you give us the green light and tell us to do it and the Supreme Court comes down the other way two years later, then we've done it wrong for two years and we've got to deal with all of that mess. Well, just because we say it might be right doesn't mean you have to do it. No, that's true. But I think it will embolden people to do it. And I'm not convinced one way or the other which way the Supreme Court is going to come out on this. As I say, all the cases so far, though, the Ellis Court, which we cited in our recent letter, two more certificate of non-finding cases have come down. And not that it binds us in any way, but there's been some very respectable academic criticism even out there as to the constitutional viability of this rule of ethics. There wasn't a time the rule was adopted. Yes, there was. There was a fight on the committee about it. There was. What I like about Rule 90211 is that it explicitly contemplates within the rule that the opposing party will have an opportunity to challenge this. The Supreme Court jurisprudence is pretty good on the issue of not having confrontation clause problems that arise in the Rule 104 setting. We have the Borgelli case. We have Matlock. We have a number of cases where the court has said you can have suppression hearings where you allow hearsay. And that will determine the ultimate admissibility at trial of co-conspirator statements. But you do not have a confrontation clause right at that preliminary stage to confront the witnesses against you. So I think if the court were to go that way, it's pretty clear at least where the precedents among the court have lined up so far. I was intrigued with your waiver, old district judge. I was intrigued with your waiver argument. A former district judge, not an old district judge. OK, thank you. Certainly the government feels here like it was kind of sandbagged, that we provided everything at least 30 days before trial, in many cases two years before trial, certainly the underlying documents. The certifications were marked as exhibits, so they were 30 days before trial as well. And everything was there. And the whole purpose of having a 90211 certification is so that you don't have to call the witness at trial. And so for someone to get up in the middle of trial and say, judge, we're objecting to this now, and have the government scramble to find 20 new witnesses, really seems to me to sort of stand the rule on its head. So we certainly think that the waiver argument is a very strong one. And I think the distinction they're trying to draw between authenticity and foundation is a little strange here. The representation this morning was that certifications were presented except on the day of admission. Well, Your Honor, that's the first time that I've heard this. I mean, certainly my understanding was that everything was provided at least 30 days beforehand. I think I have a citation in my brief to where the district court discussed that. And it wouldn't surprise me if nobody looked at the certifications until the day of trial. It wouldn't surprise me in the least. It's certainly not something that I think anybody paid attention to. I mean, what happened in this case, frankly, is Crawford was decided in the middle of the case. And nobody was thinking confrontation clause beforehand. And then pretty much any time the government tried to introduce a document, somebody would say, Crawford, Crawford, Crawford. Nobody really knew what Crawford meant yet. We're still hashing it out to some extent. But certainly in the middle of this trial, nobody really had a firm notion of what it meant. And there's some funny little recites by the judge saying, until the court tells me I can't follow the rules of evidence, I'm going to follow them. So there was a little bit of confusion here. But certainly the government provided things the way they normally are provided in cases of this type. And I just want to talk a little bit about, you know, when they say that there was no evidence provided except on a lot of these files, you have to look at what was provided, though. We had a number of insiders talk about the practice that was going on, and it was widespread here. So we proved the general theory of how all these loans were being processed. And while we didn't call absolutely every borrower, in fact, there were numerous files that were proven just on the documents, that this trial would have gone on forever, obviously. We've probably taken far too much of your time with respect to the second issue, but I'm interested in your argument on whether or not it takes two banks to kite a check. Your Honor, I think this, as opposed to the property issue, which I do think is a difficult one, in my view this is an easy one for the court. It seems to me what they're asking for is carte blanche to allow a bank fraud to continue whenever you have an insider. A check kite typically doesn't work against one bank, but when you've got an insider, it can. It does take two accounts, though. Yeah, they had about at least 11 accounts here. Their theory of the case was that this was all approved and he's such a big, important customer that, of course, the bank's making extra money off these overdrafts and he throws fine and dandy. The problem with that theory is it doesn't make any sense, because if you have the bank's approval to do these overdrafts, then why are you moving it from account to account to account every three days? What they were trying to do was avoid the five-day rule, which they knew that upper management, the person above their conspirator, would find out about the overdrafts if they kept it for more than five days. If they kept it for under five days, then only their insider would be the one who knew about it. So the facts of the situation just didn't support their theory. But certainly, the testimony at trial from our side was that the bank would never have approved of these if it had known, that the bank didn't find out until after they found out that it went on for a series of years before they finally caught it. And NCLIN is a scheme to defraud the bank. They were trying to get the value of the money that they didn't have. And even though the bank ultimately didn't have a loss because they paid it back once it was discovered, the bank was at a risk of loss. And that's all you need in a check kite. You don't have, I think Judge Greenaway called this the Bill Gates defense, that if you can pay it off when they catch you, then you haven't committed a crime. And that's not the law. Under the government's evidence, how big was the float at any one time? There were about 20 instances when it was over a million dollars. There were even more instances when it was over $500,000 that was going. And also, there was testimony we had from an individual who said that a group at one point told him he was all tapped out, he couldn't get any more loans, and also that they would have charged a higher rate of interest if they had known it was an unsecured loan. So even though they were collecting fees, they weren't collecting the fees they would have been entitled to had they known that it was unsecured. As I say, I think our strongest argument is both waiver and harmless error. I think the Crawford issue could go either way, and I don't think this court needs to reach it given the fact that it's not a practice that's going to be commonly used in the future. And the bank fraud, it is pretty clear. Thank you, and we appreciate your candor on the hearsay confrontation clause. We should thank all of counsel for their arguments. We'll take the case under advisement. We are joined in the courtroom not just by our colleague, Judge Hanson, but also by his wife, Ginger, and his grandson, Tyler, who is exploring Philadelphia and hopefully getting to learn a little bit about the history of our city. And I hope that you're enjoying yourself and that the weather continues to get a little warmer than it's been in the last few days. I really think, Your Honor, that he's more interested in the 76ers and the Pacers game tonight than he is in Liberty Valley. I really can't imagine that, but you're his grandfather. You have to take the word for it. Thank you very much, counsel, and we'll ask the clerk to close the hearing. Thank you. Thank you. Okay. Okay, sir. Hi. Hi. I'm not sure where to do this, but my name is William. Okay. Great. Thanks. How you doing? All right, let's get going, all ready? All right.